## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

KAREN HARRIS,      )
           )
   Plaintiff,     )
           )
v.           )   Case No. 11-CV-654-GKF-FHM
           )
MUSCOGEE (CREEK) NATION d/b/a )
RIVER SPIRIT CASINO, and   )
HUDSON INSURANCE COMPANY, )
           )
   Defendants.    )

### OPINION AND ORDER

Before the court are the Motion to Dismiss of defendant Muscogee (Creek) Nation ("Creek Nation") [Dkt. #11] and the Motion to Dismiss of defendant Hudson Insurance Company ("Hudson") [Dkt. # 12].

Plaintiff, a customer of River Spirit Casino, was injured in slip and fall accident at the casino on May 10, 2009. She filed suit in Tulsa County District Court against Creek Nation, the owner of the casino, asserting a claim for negligence, and against Hudson, the casino's liability insurer. [Dkt. #2-1, Petition [*Id.,* ¶¶22-23]. Plaintiff asserts she is a third party beneficiary of the insurance policy and Hudson has breached the policy by denying her tort claim. [*Id.,* ¶25]. Creek Nation removed the case to federal court pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, alleging federal question jurisdiction. [Dkt. #2, Notice of Removal]. Specifically, Creek Nation asserted the federal question raised by plaintiff's action is whether the state court has jurisdiction over a tort action arising in Indian Country against the Creek Nation. [Dkt. #2 at 1]. Citing *Williams v. Lee,* 358 U.S. 217, 217-18 (1959), the Creek Nation argued federal law determines

whether a state may exercise jurisdiction over civil actions against Indians in Indian Country. [*Id.* at 3].

Subsequently, the Creek Nation filed a Rule 12(b)(1) Motion to Dismiss, asserting plaintiff's claim against it was barred by tribal sovereign immunity, which deprives the court of subject matter jurisdiction.  Hudson also moved to dismiss the breach of contract claim pursuant to Rule 12(b)(6), on the basis that Oklahoma does not recognize a claim by an injured plaintiff against an insurer based on a third party beneficiary theory.

## I. Allegations of the Complaint

The Petition asserts the state court has subject matter jurisdiction and personal jurisdiction pursuant to 12 O.S. Supp. 2002, § 2004(F) and 3A O.S. § 281 (the Gaming Compact between Oklahoma and the Creek Nation).  [Dkt. #2-1, Petition, ¶5].  It alleges that plaintiff was injured on May 2009, when she slipped and fell at the entrance of the River Spirit Casino, breaking her right wrist.  [*Id.*, ¶10].  Plaintiff alleges the marble floor of the entrance way was wet from rainfall earlier in the evening, and the casino negligently failed to dry the floor and/or post signs warning the floor was wet.  [*Id.,* ¶¶11, 15-18].   Plaintiff alleges she filed a Notice of Tort Claim on August 3, 2009, with the Gaming Commissioner and the Deputy Commissioner of the Creek Nation, as required by 3A Okla.Stat. § 281, *et seq.* [*Id.,* ¶1].  On March 25, 2011, the insurer, Hudson, denied the claim.  [*Id.,* ¶8].  Plaintiff seeks compensatory damages against the Creek Nation for negligence and against Hudson for breach of contract. [*Id.,* ¶¶20, 27].

## II. Propriety of Removal

Plaintiff did not contest the Creek Nation's removal of this case to federal court based on federal question jurisdiction.  However, the court has an obligation under Rule 12(h)(3) to determine the existence of jurisdiction *sua sponte.*   A case arises under federal law if the well-

2

pleaded complaint establishes either that federal law creates the cause of action or that within

plaintiff's right to relief necessarily depends on resolution of a substantial question of federal

law. *Empire Healthcare Assur., Inc. v. McVeigh,* 547 U.S. 677, 689-90 (2006). This, in turn,

requires the court to determine whether the state claim "necessarily raise[s] a stated federal issue,

actually disputed and substantial, which a federal forum may entertain without disturbing any

congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons*

*Metal Prod., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314 (2005).

Creek Nation's motion raises the issue of whether a consent to suit provision in the State-

Tribal Gaming Compact operates to waive the tribe's immunity from suit in state or federal

court. The answer requires interpretation of IGRA and the gaming compacts it mandates. As

discussed below, the issue has been heavily litigated in recent years in Oklahoma. Additionally,

there appears to be little danger that the exercise of federal jurisdiction in this matter will upset

the congressionally approved balance of federal and state judicial responsibilities. Thus, the

court concludes the exercise of federal jurisdiction over the Creek Nation's motion to dismiss is

appropriate.

### III. Rule 12(b)(1) Motion

The Tribal Gaming Compact between the State of Oklahoma and the Creek Nation

contains a limited consent to suit "in a court of competent jurisdiction" with respect to tort claims

against the enterprise arising out of incidents occurring at a gaming facility. [Dkt. #11, Creek

3

Nation's Motion to Dismiss, Ex. 2, Part 6(A)2) and (6)(C)].[1]  The compact is identical to

Oklahoma's Model Gaming Compact.  *See*  3A O.S. § 281, Part 6(A)(2) and 6(C).

Plaintiff contends the limited consent operates as a waiver of sovereign immunity from

this case lies with its tribal courts.

### A. Applicable Standard

Rule 12(b)(1) motions generally take one of two forms.  "The moving party may (1)

facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2)

go beyond allegations contained in the complaint by presenting evidence to challenge the factual

basis upon which subject matter jurisdiction rests.  *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell,*

363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan,* 351 F.3d 1001, 1013 (10th Cir.

2003)).  The Creek Nation's motion is premised on its claim that it has not waived sovereign

immunity from suit in state court, thus challenging the factual basis for subject matter

jurisdiction.  Therefore, the court may consider evidence challenging the factual basis upon

which subject matter jurisdiction is based.

"Tribal sovereign immunity is a matter of subject matter jurisdiction, which may be

challenged by a motion to dismiss under Fed.R.Civ.P. 12(b)(1)."  *Miner Electric, Inc. v.*

*Muscogee (Creek) Nation,* 505 F.3d 1007, 1009 (10th Cir. 2007).  Tribal sovereign immunity

deprives a court of subject matter jurisdiction to decide any of the other matters between the

parties.  *Id.*

---

[1] Only Parts 6 and 9 of the Creek Nation Compact were attached to defendant's motion.  The
compact is available in its entirety at the National Indian Gaming Commission's website,
NIGC.gov, under "Compacts."

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Crowe & Dunlevy, P.C. v. Stidham,* 640 F.3d 1140, 1153 (10th Cir. 2011) (quoting *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58 (1978). That immunity also extends to "sub-entities or enterprises of a tribe." *Native American Distributing v. Seneca-Cayuga Tobacco Co.,* 491 F. Supp.2d 1056, 1064 (N.D. Okla. 2007) *aff'd,* 546 F.3d 1288 (10th Cir. 2008); *see also Breakthrough Management Group, Inc. v. Chukchansi Gold Casino and Resort,* 629 F.3d 1173, 1195-96 (10th Cir. 2010) (affirming that tribal casinos generally enjoy sovereign immunity unless otherwise waived).

The Indian Gaming Regulatory Act, 25 U.S.C. § 2701, *et seq.*, ("IGRA"), provides for execution of gaming compacts between States and Tribes and describes the permissible scope of those compacts.  Under IGRA, compacts may include provisions relating to the application of the criminal and civil laws and regulations of the Indian tribe or the State that are "directly related to, and necessary for, the licensing and regulation of such activity," and may also include provisions for allocation of criminal and civil jurisdiction between the State and the Indian tribe for the enforcement of such laws and regulations.  25 U.S.C. § 2710(d)(3)(C)(i)-(ii).  IGRA itself, however, only waives tribal sovereign immunity "in the narrow category of cases where compliance with IGRA's provisions is at issue and where only declaratory or injunctive relief is sought." *See Mescalero Apache Tribe v. New Mexico,* 131 F.3d 1379, 1385-86 (10th Cir. 1997); 25 U.S.C. § 2710(d)(7)(A)(ii).

Further, any waiver of sovereign immunity by the Tribe itself cannot be implied but must be "unequivocally expressed." *Ute Distribution Corp. v. Ute Indian Tribe,* 149 F.3d 1260, 1263 (10th Cir. 1998).   Plaintiff contends the Creek Nation waived sovereign immunity in Part 6(A)(2) and (6)(C) of its Gaming Compact with the State of Oklahoma.

5

In *Cossey v. Cherokee Nation Enterprises, LLC,* 212 P.3d 447 (Okla. 2009), a divided Oklahoma Supreme Court held that Oklahoma state courts are "courts of competent jurisdiction" to hear third-party tort claims by non-Indian customers brought against tribal casinos. Subsequently, in *Griffith v. Choctaw Casino of Pocola,* 230 P.3d 488 (Okla. 2009) and *Dye v. Choctaw Casino of Pocola,* 230 P.3d 507 (Okla. 2009), the Oklahoma Supreme Court held that *any* state *or* tribal court can retain jurisdiction pursuant to the tribal-state gaming compact as "courts of competent jurisdiction" over a non-Indian's tort claim against an Indian tribe or its casino enterprise.

The rulings in *Griffith* and *Dye* prompted the Choctaw Nation and Chickasaw Nation, in 2009, to demand arbitration with the State of Oklahoma pursuant to the arbitration clause in the Model Compact, as authorized by IGRA.  The tribes sought a declaratory ruling as to whether the Model Compacts allow Indian tribes operating "Class III" gaming facilities to be sued in state court for tort claims.  On August 25, 2009, the arbitrator issued an Arbitration Award determining the Model Compacts did not waive tribal sovereign immunity such that state courts could exercise civil jurisdiction over non-Indians' claims against Indian casinos.  [Dkt. #11, Ex. 2, Arbitration Award].

The Choctaw Nation moved for the Oklahoma Supreme Court to reconsider its decisions in *Dye* and *Griffith*, which the court declined to do.  *See Choctaw Nation v. Oklahoma,* 2010 WL 5798663 at *4, ¶24 (W.D. Okla. June 29, 2010).  The Choctaw and Chickasaw Nations then filed suit in the United States District Court for the Western District of Oklahoma, seeking certification and enforcement of the Arbitration Award.  *Id.* United States District Judge Lee R. West granted the tribes' motion for summary judgment on their claims.  *Id.*  The court issued a Judgment and Permanent Injunction that prevents the State of Oklahoma, including all State

courts, "from asserting civil-adjudicatory jurisdiction over Compact-based tort claim…lawsuits

against the Nations." *Id.* at *5.  In the order, Judge West stated that "any attempt by any

Oklahoma state court, including the Oklahoma Supreme Court, to exercise jurisdiction over a

Compact-based tort claim … lawsuit is a violation of the sovereignty of the Nations …."  *Id.* at

*4, ¶23.

Six months later, Judge West entered a similar judgment in favor of the Osage Nation,

Comanche Nation, Delaware Nation and the Wichita and Affiliated Tribes.  [Dkt. #11, Ex. 3,

Judgment, Case No. CIV-10-1339-W (W.D. Okla. Dec. 28, 2010)].

In *Muhammad v. Comanche Nation Casino,* Case No. 2010 WL 4365568 at *7-*11

(W.D. Okla. Oct. 27, 2010), United States District Judge Timothy D. DeGiusti found the Model

Compact between Oklahoma and the Comanche Nation does not waive tribal sovereign

immunity from suit in Oklahoma state courts.  In so ruling, the court noted the compact was

governed by IGRA and "its strong policy of promoting tribal self-government." *Id.* at *10.  The

court stated:

> Nothing in the Compact permits an inference that the tribe intended "a court of
> competent jurisdiction to include state courts.  Parts 5 and 6 of the Compact specifically
> provide for the application of tribal rules and regulations to tort claims by casino
> patrons against the tribal gaming enterprise, and those regulations limit actions to
> tribal court.

*Id.*

Finally, in *Santana v. Muscogee (Creek) Nation,* 2012 WL 896243 (N.D. Okla. March

15, 2012), United States District Judge James H. Payne reached a similar conclusion regarding

the Compact between Oklahoma and the Creek Nation.

This court concurs with the rulings by Judges DeGuisti and Payne.  In *Muhammad,* the

court recognized that under federal law generally, a tribe's waiver of immunity must be "clear."

2010 WL 435568 at *9, n. 11.  The court found the legislative policy and intent behind IGRA

sets an even higher bar for waiver, stating:  "IGRA rests on the premise that 'Indian tribes have

the exclusive right to regulate gaming activity on Indian lands if the gaming activity is not

specifically prohibited by Federal law and is conducted within a State which does not, as a

matter of criminal law and public policy, prohibit such gaming activity.'" *Id.,* at *9 (citing 25

U.S.C. § 2701(5)). "Given this premise, only an *affirmative extension of state civil-adjudicatory

jurisdiction by a tribal-state gaming compact will be sufficient to have this effect*." *Id.* (emphasis

added).

As noted by the court in *Santana,* the compact between the Muscogee (Creek) Nation and

the State of Oklahoma took effect in April 2005. 70 Fed.Reg. 18041-01 (April 8, 2005). The

court has reviewed the compact for an "unequivocable waiver" of sovereign immunity against

suit in state court, and finds none.  To the contrary, an examination of the compact compels the

opposite conclusion.

Part 6(c) of the Compact waives tribal immunity and consents to suit for tort and prize

claims in a "court of competent jurisdiction."  The Compact does not define "court of competent

jurisdiction."  However, nowhere in Part 6 or any other part of the Compact does the tribe

consent to extension of state civil-adjudicatory jurisdiction.   Rather, the compact provides, "This

Compact shall not alter tribal, federal or state civil adjudicatory or criminal jurisdiction." *Id.,* Part

9.

Other language in the compact supports a conclusion that no waiver has occurred.  For

example, Part 6(A) states, "The *enterprise* shall ensure that patrons are afforded due process in

seeking and receiving just and reasonable compensation for a tort claim…" (emphasis added).

Part 6(A)(4)-(10) sets out the process for filing of tort claims with the tribal compliance agency

8

or enterprise, and processing of those claims by the tribal compliance agency or enterprise. Additionally, Part 5(A) makes the tribe responsible for promulgating rules and regulations necessary to implement the compact.

The court concurs with Judge Payne that the gaming compact between the Muscogee (Creek) Nation and the State of Oklahoma does not waive the tribe's sovereign immunity against tort suits in Oklahoma state courts. Therefore, Creek Nation's Motion to Dismiss for lack of subject matter jurisdiction must be granted.

### IV. Hudson's Rule 12(b)(6) Motion

Plaintiff's claim against Hudson is a state common law claim for breach of contract based on a third party beneficiary theory. Having granted the Creek Nation's subject matter jurisdiction motion, the court declines to exercise pendent jurisdiction over the contract claim.

### V. Conclusion

For the foregoing reasons, defendant Creek Nation's Motion to Dismiss [Dkt. #11] is granted.

ENTERED this 18th day of June, 2012.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

9